UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.

**NATHANAEL THOMPSON,**

    **Defendant.**

Case No. 2:21-CR-173(1)
JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

This matter is before the Court on Defendant Nathanael Thompson's Second Motion for New Trial. (Thompson 2nd Mot., ECF No. 175.)  For the reasons below, the Court **DENIES** Defendant's Motion.

## BACKGROUND

A grand jury indicted Thompson and another defendant, Sanam Ahmad, on charges of health care fraud for billing Ohio Medicaid for distributing one version of the drug omeprazole while dispensing another version of the same drug that was ineligible for reimbursement. (Indictment, ECF No. 1.)  Following a February 2024 trial, a jury found Thompson and Ahmad guilty of one count each of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count I) and two counts each of health care fraud in violation of 18 U.S.C. § 1347 (Counts II and III).  (Jury Verdict, ECF No. 136.)

In March 2024, Thompson moved for a new trial on grounds of prosecutorial misconduct based on the Government's alleged misrepresentation of exhibits and misleading labels for describing certain types of drugs and, separately, because of ineffective assistance of counsel. (Thompson 1st Mot., ECF No. 141.)  Ahmad also filed a Renewed Motion for Judgment of

Acquittal and Motion for New Trial (Ahmad Mot., ECF No. 142.). The Court denied Thompson's and Ahmad's motions. (Order Denying Defs. Mots., ECF 172.)

Thompson again moves for a new trial, now on the grounds that, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the Government failed to disclose the criminal history of one of its witnesses, Halima Abukar, and, separately, that Abukar perjured herself at trial regarding her educational background. (Thompson 2nd Mot., ECF No. 175.) In addition to a new trial, he requests an evidentiary hearing or leave to obtain limited discovery to ascertain whether the Government was aware of Abukar's alleged criminal history. (*Id.*) The Government responded (ECF No. 177), and Thompson replied (ECF No. 182).

This Opinion and Order incorporates the factual record and findings as described in its prior Opinion and Order (ECF No. 172) denying Thompson's First Motion for a New Trial.

## STANDARD OF REVIEW

When a defendant moves for a new trial under Federal Rule of Criminal Procedure 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a) ("Rule 33"). "The rule does not define interest of justice and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (cleaned up). Newly discovered evidence may serve as grounds for a new trial under Rule 33. *United States v. Sypher*, 684 F.3d 622, 626 (6th Cir. 2012). "To prevail on a motion for a new trial based on newly discovered evidence, 'a defendant must show that the new evidence (1) was discovered after the trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal.'" *Id.* (quoting *United States v. Hanna*, 661 F.3d 271, 297 (6th Cir. 2011). "Generally, such motions are granted only 'in the extraordinary circumstance where the evidence

preponderates heavily against the verdict.'" *United States v. Hughes*, 505 F.3d 578, 592–93 (6th Cir. 2007) (quoting *United States v. Turner*, 490 F.Supp. 583, 593 (E.D. Mich. 1979), aff'd, 633 F.2d 219 (6th Cir. 1980)).

## ANALYSIS

The Court first considers whether Thompson has demonstrated that the Government violated *Brady* or relied on perjured testimony before applying its conclusions on these questions to the standard for a new trial under Rule 33.

### I. Thompson's *Brady* Argument

Thompson first argues that the Government violated *Brady* by failing to disclose evidence of Abukar's criminal history, which he argues is impeachment evidence because it reflects on her credibility. (Thompson 2nd Mot., ECF No. 175, PageID #2495–96.)

A *Brady* violation may serve as grounds for a new trial. "A *Brady* violation requires three elements: (1) '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) 'th[e] evidence must have been suppressed by the State, either willfully or inadvertently'; and (3) 'prejudice must have ensued.'" *United States v. Rafidi*, 829 F.3d 437, 447 (6th Cir. 2016) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). The suppression of material evidence violates a defendant's Fourteenth Amendment due process rights "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 86–87.

#### A. Thompson's Allegation of Abukar's Suppressed Criminal History

Attached to his motion, Thompson provided an "Investigations Summary" dated July 23, 2024, in which his investigator claimed that Abukar was indicted in Delaware County, Ohio in January 2016 for a fifth-degree felony charge of theft, in violation of R.C. 2913.02(A)(1). (ECF No. 175-1.) The summary further claimed the case was sealed by the Delaware Court of Common

Pleas in February 2021 and indicates no other disposition. (*Id.*) Thompson also attached a July 23, 2024 email from a Delaware Police Department records official to Thompson's investigator stating that "the report you requested has been sealed by Delaware County Common Pleas court. I am not able to provide you with any report." (ECF No. 175-2.) In his memorandum in support of his motion, Thompson claims that the request referred to in this email related to Abukar's 2016 theft case. (Thompson's 2nd Mot., ECF 175, at PageID #2494–95.) Without support from his attachments or other evidence, he asserts that she was convicted of the theft offense.

The Government does not contest the existence of a sealed Delaware County criminal record for Abukar, but it argues Thompson's evidence does not suggest she was convicted of theft. Further, the Government contends it first asked the Ohio Board of Pharmacy (OBP) for a report on Abukar's criminal history in January 2024, prior to Thompson's trial, and that the report generated no criminal history. (ECF Nos. 177-1, 177-2.) An attached August 2024 email from an OBP agent stated that a January 2024 search by an intelligence analyst "indicated no records were found for Ms. Hagi-Abukar." (*Id.*) A subsequent records search by OBP in September 2024 also produced no criminal history. (ECF No. 177-3.) The attached records for the September search show that search was conducted using two systems, one of which is designated as the National Crime Information Center (NCIC)'s Interstate Identification Index (III), while the other system is unidentified. (*Id.*)

### B. Abukar's Record Might Be Impeachment Evidence

Thompson asserts that Abukar's alleged conviction for theft is favorable impeachment evidence under *Brady* because it constitutes "a dishonest fact or false statement" admissible as impeachment evidence regarding Abukar's character for truthfulness under Federal Rule of Evidence 609(a)(2). (Thompson 2nd Mot., ECF No. 175, at PageID #2493.) In the Government's

4

view, even assuming Abukar's sealed criminal record includes a conviction for felony theft in the fifth degree, it would not be admissible impeachment evidence because "the Sixth Circuit has concluded that theft is not necessarily a crime involving dishonesty or false statement." (Thompson 2nd Mot., ECF No. 175, at PageID #2523) (citing *United States v. Washington*, 702 F.3d 886, 893 (6th Cir. 2012.) Courts generally treat the question as a fact-dependent inquiry, rather than adopting a categorical approach. *See, e.g.*, *Abernathy v. Corinthian Colls., Inc.*, 2013 U.S. Dist. LEXIS 398, at *8-9 (S.D. Ohio Jan. 2, 2013) (holding that evidence of a shoplifting charge was inadmissible under Fed. R. Evid. 609(a)(2) because the court did not have facts suggesting it involved an element of dishonesty or false statement).

Because the Court has no established facts regarding the circumstances of the theft crime for which Abukar was indicted and possibly convicted, the Court cannot say whether the alleged criminal acts involved a dishonest act or false statement. Of course, this is Thompson's point and the reason why he moves for additional discovery and an evidentiary hearing. However, because we resolve his *Brady* claim on other elements, we need not determine whether Abukar's sealed criminal record constituted admissible impeachment evidence.

### C. The Government Did Not Suppress Abukar's Criminal History Record

On the evidence presented in briefing before this Court, the Government acted reasonably in requesting Abukar's criminal history record prior to and after trial. Since all its record requests returned no Ohio criminal history for Abukar, it reasonably asserts it never possessed the information regarding Abukar's apparent sealed case in Delaware County. However, the Government can suppress evidence in violation of *Brady* even when it lacks actual knowledge of the evidence—"the rule encompasses evidence 'known only to police investigators and not to the prosecutor.'" *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (quoting *Kyles v. Whitley*, 514

U.S. 419, 438 (1995)). Indeed, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles* at 437.

Here, Thompson fails to connect the dots between the Department of Justice prosecutors and the Delaware Police Department, which he alleges had knowledge of Abukar's sealed criminal record. He does not show that the Delaware Police Department or any other entity that would have knowledge of Abukar's sealed criminal record acted on the Government's behalf in his case.

Otherwise, Thompson broadly alleges that the prosecutors should have had knowledge of Abukar's criminal history because law enforcement officers interviewed her in November 2017 and March 2018, after her alleged indictment but before her case was sealed in February 2021. (Thompson 2nd Mot., ECF No. 175, at PageID #2495.) Again, however, Thompson fails to convince this Court that the Government had a duty to learn about Abukar's sealed criminal record or its contents from an entity in-the-know. His argument that investigators knew or should have known about Abukar's criminal history is unsupported by the record, and the Government provided an email from a Board official stating that they failed to locate any criminal history on Abukar. Therefore, this Court cannot say the Government had a duty to learn about Abukar's sealed criminal record from a police or investigatory agency that was aware of its existence.

Additionally, Thompson does not point this Court to case law or other authority indicating that the Government has an obligation to unearth sealed records that do not appear in standard criminal history databases available to state investigatory officials such as those at the Ohio Board of Pharmacy. Although Thompson correctly observes that, in criminal proceedings, Ohio law *permits* disclosure of otherwise admissible records that have been sealed and expunged per R.C. 2953.34(B)), he does not demonstrate that the Government has an *obligation* to conduct searches

6

beyond those it completed here to discover such sealed records. It is enough that the Government demonstrated that traditional methods of searching for a witness's criminal history through official state agency partners turned up nothing.

Accordingly, this Court finds that the Government acted reasonably and with due diligence in attempting to locate Abukar's criminal history record and, discovering none, it possessed nothing to turn over to Thompson. Therefore, it did not suppress Abukar's sealed criminal record and did not violate *Brady*.

### D. Thompson Was Not Prejudiced by Lacking Abukar's Criminal History Record

Even if the suppression element of *Brady* was met, Thompson does not demonstrate prejudice from Abukar's undisclosed record. It is true that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within" the general rule of *Brady*, and a new trial may be required. *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). But here, Thompson does not articulate facts describing the circumstances of Abukar's alleged 2016 theft nor how her apparent indictment for theft affects her reliability or her character for truthfulness. Indeed, as discussed above, even if Abukar was convicted of theft, the admissibility of her criminal history is not immediately apparent under Federal Rule of Evidence 609.

Furthermore, the evidence presented at Thompson's trial sufficiently overwhelms any potential prejudice he may have faced from lacking Abukar's sealed criminal history record. As recounted in this Court's Opinion and Order denying Thompson's First Motion for a New Trial and in the briefing before this Court on that motion and the present motion, Thompson was an experienced, licensed Ohio pharmacist. He kept records of the income gleaned from Ohio Medicaid reimbursement claims for omeprazole that he sourced from Sam's Club or Costco and

7

actively communicated with pharmacists dispensing drugs at pharmacies where he was the Responsible Pharmacist. Other documentary and testimonial evidence apart from Abukar's testimony overwhelmingly proved his guilt. Therefore, Thompson does not meet the prejudice element of *Brady*, and his argument for a new trial thus fails on that additional ground.

**2. Abukar's Possible Misstatement Did Not Affect the Jury's Judgment**

Thompson further argues that the Government relied on Abukar's perjured testimony that she was studying nursing at Ohio State University to mislead the jury about her educational background. (Thompson 2nd Mot., ECF No. 175, PageID #2495.)

The prosecution's reliance on false testimony could serve as grounds for a new trial under Rule 33. "The knowing use of perjured testimony, including the failure to correct false testimony, constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Foley v. Parker*, 488 F.3d 377, 391-92 (6th Cir. 2007) (citing *Napue v. Illinois*, 360 U.S. 264, 272 (1959)). "In order to prevail on his claim that his conviction was obtained with the use of evidence that the prosecution knew or should have known was false, 'the moving party must show (1) the statements were actually false; (2) the statements were material, . . .; and (3) [the] prosecution knew they were false.'" *United States v. O'Dell*, 805 F.2d 637, 641-42 (6th Cir. 1986) (quoting *United States v. Chagra*, 735 U.S. F.2d 870, 874 (5th Cir. 1984)).

Thompson claims Abukar is a student in the "Health Professionals Exploration" program and is not a nursing student. (Thompson 2nd Mot., ECF No. 175, PageID #2495.) Therefore, he submits, the Government misled the jury about Abukar's "basis of knowledge concerning pharmacy and medical billing procedure." (*Id.* at PageID #2498.) The Government contends

8

Abukar told the truth about her background and did not perjure herself.  (Gov't Response, ECF No. 177, PageID #2527-28.)

The Court resolves this argument by considering the potential prejudice or materiality of the alleged misstatement, if there even is one.  Thompson has not shown that Abukar's declaration that she was "studying nursing" while she was participating in an exploratory program for aspiring health professionals constitutes a significant embellishment of her educational background that could qualify as perjury.  If anything, perhaps her course of study was more akin to a "pre-nursing" program than "studying nursing."  Regardless, given that the relevance and credibility of her testimony depended far more on her work as a pharmacy technician who filled orders at Thompson's pharmacies, rather than on her educational background, the Court cannot say that her description of her degree program had any reasonable likelihood of affecting the jury's judgment.

### 3. Thompson Does Not Meet the Four-Part Test for a New Trial Under Rule 33(a).

For the same reasons leading to the above conclusions that the Government did not violate *Brady* and did not rely on material perjured testimony to obtain the conviction, Thompson does not meet the requirements for a new trial under Federal Rule of Criminal Procedure 33(a).  *See Sypher*, 684 F.3d at 626.

Thompson has not explained why evidence of Abukar's criminal history record could not have been discovered earlier.  Other than the fact the record was sealed—which it had been for years before the trial—he cannot explain why, with due diligence, the record could only surface in the aftermath in a request for a new trial.  Furthermore, the admissibility of Abukar's sealed criminal record is questionable, and it was unlikely to produce an acquittal, as discussed earlier in the *Brady* discussion.

Finally, as already explained in this opinion, Abukar's potentially misleading description of her educational background had no potential to produce an acquittal and was not material. Thompson had the ability to cross-examine Abukar about her educational background at trial and did not.  Given the lack of attention to her educational qualifications at trial and the lack of evidence that her nursing studies would mislead the jury about the veracity of her testimony regarding her pharmaceutical work, Thompson does not show how Abukar's declaration that she was "studying nursing" materially misled the jury.

Therefore, Thompson does not meet the requirements for a new trial under Rule 33 on either ground, and a new trial is not in the interest of justice.

## CONCLUSION

Based on the above findings and analysis, the Court **DENIES** Defendant Nathanael Thompson's Second Motion for New Trial (ECF No. 175).  Accordingly, the Court also **DENIES** his requests for an evidentiary hearing and for additional discovery.

The Court will proceed with sentencing as scheduled.

**IT IS SO ORDERED**.


**10/11/2024**                                            s/Edmund A. Sargus, Jr.
**DATE**                                                           **EDMUND A. SARGUS, JR.**
                                                                             **UNITED STATES DISTRICT JUDGE**